<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RUSS SEMERAN, on behalf of himself and all others similarly situated, | : | Case: 2:15-CV-00750-SDW-LDW |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| BLACKBERRY CORPORATION | : | **OPINION** |
| Defendant. | : | |
| | | February 1, 2016 |

**WIGENTON**, District Judge

      Before this Court is Defendant BlackBerry Corporation's ("BlackBerry" or "Defendant"), Motion to Dismiss Plaintiff Russ Semeran's ("Semeran" or "Plaintiff") Amended Complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2). Venue is proper pursuant to 28 U.S.C. § 1391. This Opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78.

      For the reasons stated herein, Defendant's Motion to Dismiss is **GRANTED**.

**I. BACKGROUND**

      **A. The Parties**

      Plaintiff Russ Semeran is a citizen of the state of New Jersey. (Am. Compl. ¶ 10.) Plaintiff brings this action on behalf of himself and all similarly-situated individuals and entities who purchased BlackBerry Cellular "Smart" Telephone Devices from BlackBerry later found to be

1

defective.  (*Id.* at ¶ 2.)  BlackBerry is incorporated under Delaware law, with its headquarters in Waterloo, Ontario, Canada.  (*Id.* at ¶ 11.)  BlackBerry's U.S. headquarters is in Irving, TX.  (*Id.*)  BlackBerry markets and sells the BlackBerry 10 Series Cellular Telephones.  (*Id.* at ¶ 12.)

### B. Factual Allegations

In or about January 2013, Defendant introduced BlackBerry 10 Series Cellular Telephones ("BB10" smartphones).  (*Id.* at ¶ 20.)  BB10 smartphones and tablet handheld devices run the BlackBerry 10 operating system.  (*Id.* at ¶ 18.)  BlackBerry undertook a large-scale marketing campaign extolling the benefits of BB10 telephones.  (*Id.* at ¶ 51.)  This marketing campaign reached potential customers via email, internet, and television.  (*See Id.* at ¶ 65.)

Due to its allegedly defective operating system, BB10 phone users experienced defects within the contact application ("contact app"), photo application ("photo app"), and BB10's inability to support Yahoo Calendar.  Plaintiff alleges that BlackBerry knew or should have known about the defects in their pre-market testing of BB10 phones.  (*Id.* at ¶ 41.)  BlackBerry continued to market and sell BB10 phones without curing or disclosing the defects.  (*Id.* at ¶ 42; *see* ¶ 52.)

*Contact Application*

BlackBerry designed its contact app to automatically merge similar contacts together "when it's clear that those contacts are the same person."  (*Id.* at ¶ 26.)  After identifying multiple contacts within the contact app sharing unique identifying characteristics such as first and last name, mobile phone number, or BlackBerry ID, the contact app automatically combines the repeat contacts into a single merged contact.  (*Id.*)  Plaintiff alleges this automatic merge has proven defective by merging together unrelated contacts.  BlackBerry's website support forum contains multiple customer complaints regarding this contact app defect.  (*Id.* at ¶ 27.)

2

*Photo Application*

A second defect found while using the BB10 phones is the inability to compress picture files for the purposes of emailing. BB10 phones do not contain this option and require the user to email the complete image file. (*Id.* at ¶ 28.) Defendant's website support forum contains multiple customer complaints regarding this photo app defect. (*Id.* at ¶ 27.)

*Inability to Support Yahoo Calendar*

BB10 phones are incompatible with commonly used applications such as Yahoo Calendar. (*Id.* ¶ 29.) Yahoo acknowledged the incompatibility on their Help website, noting that "we do not currently have an estimated time on this resolution." (*Id.* at ¶ 29.)

*Plaintiff Semeran*

Plaintiff seeks to represent both a Nationwide Class and New Jersey Sub-class of consumers who purchased BlackBerry model numbers Z30, Z10, Z3, Q10, Q5, P'9982, and P'9983. (Am. Compl. ¶ 2.) Plaintiff alleges that after exposure to BlackBerry's email, internet, and television advertisements, Plaintiff received a direct email solicitation announcing the launch of a new BB10 phone – the Q10 model. (*Id.* at ¶ 65, 66.) Plaintiff alleges that the advertisements and direct emails did not contain disclosures relating to the defects present in BB10 phones. (*Id.*) On June 5, 2013, Plaintiff purchased a BB10 phone from the T-Mobile store in Paramus, New Jersey for approximately $ 620.59 including tax and other charges. (*Id.* at ¶ 64.) Plaintiff contends that he noticed the contact and photo app defects while using his Q10 phone during the warranty period. (*Id.* at ¶ 32, 69.)

Plaintiff contacted T-Mobile customer support, which escalated his complaint directly to Defendant. (*Id.* at ¶ 71.) On August 18, 2013, Defendant notified Plaintiff via email that "no

resolution timeframe is currently available for the BlackBerry Link issues." (*Id.* at ¶ 72) Between August 2013 and August 2014, Plaintiff contacted Defendant several times via telephone and email. (*Id.* at ¶ 76.) Defendant denied Plaintiff's specific request for a replacement device. (*Id.* at ¶ 78.)

On August 25, 2013, he received notification that BlackBerry was internally escalating his photo app complaint for investigation. (*Id.* at ¶ 74.) Regarding the contact app defect, Plaintiff received notification on September 6, 2013 that BlackBerry was internally escalating his complaint for investigation. (*Id.* at ¶ 75.) In an attempt to cure the defects himself, Plaintiff purchased a $25.00 program from the website www.Bb10outlooksync.com. (*Id.* at ¶ 79.) Plaintiff subsequently purchased a replacement phone from a competitor company. (*Id.* at ¶ 80.)

### C. Procedural History

On February 2, 2015, Plaintiff filed a six (6) count Class Action Complaint on behalf of himself and similarly situated New Jersey and nationwide class plaintiffs, which was later amended on April 20, 2015, against BlackBerry alleging: (1) violations of New Jersey's Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-2 *et seq.* (Count I); (2) fraudulent concealment/ non-disclosure (Count II); (3) breach of implied warranties (Count III); (4) breach of express warranties (Count IV); (5) negligent misrepresentation (Count V); and (6) unjust enrichment (Count VI). BlackBerry filed the present motion to dismiss all counts of Plaintiff's Amended Complaint pursuant to Rule 12(b)(6), which is opposed by Plaintiff. (Dkt. No. 14.)

## II. LEGAL STANDARD

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to

relief." *See also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief"). In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) ("*Twombly*"). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks omitted). According to the Supreme Court in *Twombly*, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his[or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (internal citations omitted). Furthermore, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Third Circuit summarized the *Twombly* pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

Moreover, Rule 9(b) imposes a heightened pleading standard for allegations sounding in fraud; namely, "a party must state with particularity the circumstances constituting fraud or

mistake." Fed. R. Civ. Pro. 9(b).  The circumstances of the alleged fraud must be stated with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).  Plaintiff's causes of action for violation of the NJCFA, fraudulent concealment, and negligent misrepresentation are all subject to the heightened specificity required by Rule 9(b).  *See id.* at 202-03; *Byrnes v. De Bolt Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir. 1984).

## III. DISCUSSION

### 1. *Standing*

Pursuant to Article III of the United States Constitution, the court may exercise jurisdiction only where there is an actual case or controversy.  *Golden v. Zwickler*, 394 U.S. 103, 108 (1969). Standing is a "threshold question," *Warth v. Seldin*, 422 U.S. 490, 498 (1975), and "[t]he party invoking federal jurisdiction bears the burden" of proof.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  To meet this burden, "the irreducible constitutional minimum of standing" involving three elements must be established.  *Id.* at 560.

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Id. at 560-61 (alterations in original) (internal quotation marks and citations omitted).

Although all three elements have to be met, "the injury-in-fact element is often determinative." *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009). Most importantly, "the injury must affect the plaintiff in a personal and individual way." *Luan*, 504 U.S. at 561 n.1. Additionally, "[i]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991) (citations omitted). Moreover, "'[t]he standing inquiry does not change in the context of a putative class action. . . . [S]tanding cannot be predicated on an injury which the plaintiff has not suffered, nor can it be acquired through the back door of a class action.'" *Koronthaly v. L'Oreal USA, Inc.*, Civ. A. No. 07-5588, 2008 U.S. Dist. LEXIS 59024, at *13 (D.N.J. July 29, 2008), *aff'd*, 374 F. App'x 257 (3d Cir. 2010) (quoting *In re Franklin Mut. Funds Litigation*, 388 F. Supp. 2d 451, 461 (D.N.J. 2005)). "[A] plaintiff in a class action must show that she has personally been injured; indeed, the class plaintiff cannot rely on 'injuries suffered by other, unidentified members of the class.'" *Lieberson v. Johnson & Johnson Consumer Cos.*, Civ. A. No. 10-6196, 2011 U.S. Dist. LEXIS 107596, at *14 (D.N.J. Sept. 21, 2011) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

Here, Plaintiff alleges that he bought only the Q10 model of the BlackBerry smartphones. (Am. Compl. ¶ 64.) Nevertheless, Plaintiff seeks to represent both a Nationwide Class and New Jersey Sub-class of consumers who purchased BlackBerry model numbers Z30, Z10, Z3, Q10, Q5, P'9982, and P'9983. (Am. Compl. ¶ 2.) Plaintiff does not have "standing to pursue a claim that products []he neither purchased nor used did not work as advertised." *Lieberson*, 2011 U.S. Dist. LEXIS 107596, at *13-14. Consequently, this Court will only consider Plaintiff's allegations pertaining to the Q10 model. Plaintiff's claims relating to the other smartphone models are dismissed.

2. **Individual Claims**

   a. **New Jersey Consumer Fraud Act ("NJ CFA")**

The NJ CFA, which affords private citizens with a cause of action under limited circumstances, provides in relevant part: "Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act . . . may bring an action . . . in any court of competent jurisdiction." N.J. Stat. Ann. § 56:8-19. To state a private cause of action under the NJ CFA, "a plaintiff must allege each of three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *N.J. Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 12-13 (App. Div. 2003), *certif. denied*, 178 N.J. 249 (2003) (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 24 (1994)). There are three categories of unlawful conduct under the NJ CFA: "(1) affirmative acts, *i.e.*, misrepresentations; (2) omissions; and (3) regulatory violations." *Hughes v. Panasonic Consumer Elecs. Co.*, Civ. A. No. 10-846, 2011 U.S. Dist. LEXIS 79504, at *31 (D.N.J. July 21, 2011) (citing *Solo v. Bed Bath & Beyond, Inc.*, Civ. No. 06-1908, 2007 U.S. Dist. LEXIS 31088, at *2 (D.N.J. Apr. 26, 2007); *Cox*, 138 N.J. at 17).

Plaintiff has failed to satisfy Rule 9(b)'s heightened pleading requirement. Plaintiff generally alleges that Defendant made misrepresentations on its website and in an email announcing the launch of the Q10 model. (Am. Compl. ¶¶ 66-67.) However, Plaintiff fails to point to any specific statements from these sources. Plaintiff also quotes a press release and television commercial from Defendant, but does not identify which statements were false. (*Id.* at ¶ 51.) Moreover, Plaintiff fails to allege the particular date, place, and time relating to any of these alleged

misrepresentations. Importantly, Plaintiff does not allege that he read any of these specific statements prior to his purchase on June 5, 2013 or that any of these statements caused him to purchase the Q10.

Likewise, Plaintiff's claims regarding Defendant's alleged omissions lack the requisite amount of specificity required by Rule 9(b). Although Plaintiff alleges that pre-market testing, the contents of Defendant's warranty database, complaints to Defendant's support division, and user complaints on online forums would have put Defendant on notice of the alleged defects, he fails to allege any dates or details regarding who received these complaints, and the results of any pre-market testing.

### b. Fraudulent Concealment

To state a claim for fraudulent concealment, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) a reasonable reliance thereon by the other person; and (5) resulting damages." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 305 (D.N.J 2009). The "[d]eliberate suppression of a material fact that should be disclosed" is "equivalent to a material or affirmative misrepresentation, which will support a common law fraud action. *Id.* However, there is no duty to disclose a fact "unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship,'" such as a fiduciary relationship. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993). Furthermore, claims for fraudulent concealment must meet the heightened pleading standards of Rule 9(b).

Plaintiff has failed to state a claim for fraudulent concealment under Rules 8(a) or 9(b). Plaintiff alleges that Defendant had "exclusive knowledge of the Defects at the time of sale" and it nevertheless deceived consumers into purchasing defective smartphones. (Am. Compl. ¶ 116.)

Plaintiff argues that Defendant had a duty to disclose the alleged defects. (*Id.* at ¶¶ 122-23.) In his opposition, Plaintiff asserts that Defendant knew that the smartphone's contact function was defective based on pre-market testing and complaints on user forums. (Pl.'s Opp. 9.) According to Plaintiff, Defendant stated on its website that the Blackberry Q10 smartphones provided a "contact" feature and made no mention of the device's inability to place outgoing calls. (Pl.'s Opp. 2.) However, Plaintiff fails to allege that he read and reasonably relied on that statement prior to his purchase on June 5, 2013. Moreover, Plaintiff does not plead that Defendant intended that Plaintiff rely on its statement, or that his particular phone was damaged as a result.

### c. Negligent Misrepresentation

The elements of negligent misrepresentation are the same as those for fraudulent concealment, except that a plaintiff need not allege knowledge of falsity or intent to induce reliance. Where a claim for negligent misrepresentation is based on an omission, such as a failure to disclose a defect, a plaintiff must allege that he had a special relationship with the defendant. *Saltiel v. GSI Consultants*, Inc., 170 N.J. 297, 315 (2002).

Plaintiff has not sufficiently set forth a claim for negligent misrepresentation under Rules 8(a) or 9(b). In his amended complaint, Plaintiff alleges that Defendant made "misrepresentations in its standard written warranty . . . that it would repair defective Blackberry" smartphones. (Am. Compl. ¶ 151.) Plaintiff fails to allege that he had a special relationship with Defendant or that he reasonably relied on Defendant's website when making his purchase. Further, he does not set forth any facts with respect to his resulting damages.

### d. Breach of Express Warranty

To state a claim for breach of express warranty, a plaintiff must allege "(1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise

or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 706 (D.N.J. 2011).

Plaintiff has not pled a claim for breach of express warranty. In his amended complaint, Plaintiff bases this claim on an alleged one-year written warranty stating that his smartphone would be free from defects. (Am. Compl. ¶¶ 142-148.) However, in his opposition he claims a breach of express warranty resulting from Defendant's website statements regarding the contact feature. (Pl.'s Opp. 20-21.) Plaintiff fails to sufficiently allege that these statements amounted to an express warranty and that they became a basis of the bargain because he read them before purchasing his Q10 smartphone.

### e. Breach of Implied Warranty

New Jersey has adopted the Uniform Commercial Code to govern commercial transactions involving the purchase and sale of goods. *Noble v. Porsche Cars N. Am., Inc.*, 694 F. Supp. 2d 333, 337 n.3 (D.N.J. 2010) (citing N.J. Stat. Ann. § 12A:2-102, et seq.). "Merchantability requires that a product conform to its ordinary and intended use." *Hughes v. Panasonic Consumer Elecs. Co.*, 2011 WL 2976839, at *21 (D.N.J. July 21, 2011). The warranty "does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *Lieberson*, 2011 U.S. Dist. LEXIS 107596, at *29 (quoting *Hughes*, 2011 U.S. Dist. LEXIS 79504, at *63) (internal quotation marks omitted). In other words, the warranty requires "that the article sold should be of the general kind described and reasonably fit for the general purpose for which it should have been sold." *Adams v. Peter Tramontin Motor Sales, Inc.*, 42 N.J. Super. 313, 321 (App. Div. 1956) (emphasis added); *see also* N.J. Stat. Ann. §

12A:2-314(2)(c) (describing merchantable goods as those that are "fit for the ordinary purposes for which such goods are used").

Plaintiff has not set forth a claim for breach of the implied warranty of merchantability. Plaintiff asserts that he purchased his smartphone for the purpose of "plac[ing] telephone calls and send[ing] emails, including emails with photo attachments." (Am. Compl. ¶ 134.) However, Plaintiff does not plead sufficient facts showing that he was unable to use his smartphone for the general purpose for which the smartphone should have been sold. Moreover, Plaintiff fails to sufficiently allege that his smartphone fell below a minimum level of quality.

### f. Unjust Enrichment

To state a claim for unjust enrichment, the plaintiff must prove: 1) the "defendant received a benefit" from the plaintiff; (2) "retention of that benefit [by the defendant] without payment would be unjust"; (3) plaintiff "expected remuneration from defendant at the time [he] performed or conferred a benefit on defendant"; and (4) the "failure of remuneration enriched [the] defendant beyond its contractual rights." *See VRG Corp. v. GKN Realty Co.*, 135 N.J. 539, 554 (1994). Essential to an unjust enrichment claim is a direct relationship between the plaintiff purchaser and the defendant or "a mistake on the part of the person conferring the benefit." *Hughes*, 2011 U.S. Dist. LEXIS 79504, at *78 (quoting *Fasching v. Kallinger*, 211 N.J. Super. 26, 36 (App. Div. 1986)). As a basic premise, "[w]hen consumers purchase a product from a third party, they confer a benefit on that third party, not on the manufacturer." *Synder v. Farnam Cos.*, Civ. No. 10-1391, 2011 U.S. Dist. LEXIS 56472, at * 26 (D.N.J. May 26, 2011).

Plaintiff alleges that he purchased a Q10 BlackBerry smartphone. (Am. Compl. ¶ 64.) However, he fails to allege that he purchased the phone directly from Defendant. Rather, he claims that he purchased the phone directly from T-Mobile. (*Id.*) Also, Plaintiff does not allege that he

expected remuneration from Defendant at the time he purchased his smartphone or that Defendant was enriched beyond its contractual rights, or that he was mistaken in conferring a benefit to Defendant.  Without an allegation of a direct relationship or a mistake, Plaintiff has insufficiently pled a claim for unjust enrichment.  *See Cooper v. Samsung Elecs. Am., Inc.*, Civ. A. No. 07-3853, 2008 U.S. Dist. LEXIS 75810, at *30-31 (D.N.J. Sept. 30, 2008), aff'd, 374 F. App'x 250 (3d Cir. 2010) (concluding that the plaintiff had insufficiently pled a claim for unjust enrichment because he did not allege that he purchased the products directly from the defendant).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Amended Complaint is **GRANTED** without prejudice.  Plaintiff has thirty (30) days from the date of this Opinion and Order to amend his Complaint. [1]

s/ Susan D. Wigenton, U.S.D.J.

Orig:       Clerk
cc:         Hon. Leda D. Wettre, U.S.M.J.
            Parties

---

[1] Because this Court is granting Plaintiff the opportunity to amend, the class allegations will not be addressed at this time.