UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>JOHN MICHAEL VAZQUEZ<br>UNITED STATES DISTRICT<br>JUDGE | FRANK R. LAUTENBERG<br>POST OFFICE AND<br>COURTHOUSE<br>2 FEDERAL SQUARE, ROOM 417<br>NEWARK, NJ 07102<br>973-297-4851 |

July 6, 2016

<u>VIA ECF</u>

<u>**LETTER OPINION AND ORDER**</u>

  Re: <u>SEMERAN v. BLACKBERRY CORP.</u>
     <u>Civil Action No. 15-750</u>

Dear Litigants:

  The Court has reviewed Defendant BlackBerry Corporation's ("BlackBerry" or "Defendant") motion to dismiss the Second Amended Complaint for failure to state a claim and to strike the class allegations. For the reasons stated below, the Court grants Defendant's motion with prejudice.

  This case concerns the alleged defects of Plaintiff Russ Semeran's ("Plaintiff") BlackBerry telephone.[1] Plaintiff filed his original complaint on February 2, 2015. D.E. 1. On April 20, 2015 Plaintiff filed a First Amended Complaint ("FAC"), which contained six counts against Defendant.[2] D.E. 22. On June 6, Defendant moved to dismiss Plaintiff's FAC, which Plaintiff opposed. D.E. 24, D.E. 26. On February 2, 2016, Judge Wigenton granted Defendant's motion to dismiss without prejudice. D.E. 31, 32. In her opinion, Judge Wigenton found that Plaintiff's implied warranty claim failed to "plead sufficient facts showing that he was unable to use his smartphone for the general purpose for which the smartphone should have been sold" and "fail[ed] to sufficiently allege that his smartphone fell below a minimum level of quality." D.E. 31, at 12. Judge Wigenton permitted Plaintiff to file a second amended complaint to address the pleading deficiencies.

---

[1] The Court will use "BlackBerry" and "smartphone" interchangeably.

[2] The counts in Plaintiff's FAC were: Count I – Violations of New Jersey's Consumer Fraud Act, N.J.S.A. § 56:8-2, *et seq.*, and Substantially Similar Law of Certain Other States, Count II – Fraudulent Concealment/Nondisclosure, Count III - Breach of Implied Warranty, Count IV – Breach of Express Warranties, Count V – Negligent Misrepresentation, and Count VI – Unjust Enrichment.

On March 2, 2016, Plaintiff filed the Second Amended Complaint ("SAC") against Defendant. D.E. 33. In the SAC, Plaintiff asserted a single cause of action: breach of implied warranty. SAC ¶¶ 95-102. Defendant now moves to dismiss the SAC.[3] Defendant alleges that Plaintiff has failed to correct the pleading deficiencies noted by Judge Wigenton and that Plaintiff's allegations remain inadequate to support a claim that his smartphone is not fit for its ordinary purpose. Def. Br. at 8. Additionally, Defendant argues that the Court should strike Plaintiff's class action allegations because, among other reasons, Plaintiff does not have standing since he is not a member of a class he wishes to represent.[4]

Plaintiff argues that BlackBerry has waived many of its arguments by failing to raise them in its prior motion to dismiss. Pl. Opp. at 7-11.[5] Plaintiff also contends that the SAC properly states a claim for breach of implied warranty of merchantability. *Id.* at 11. Lastly, Plaintiff argues that BlackBerry's motion to strike the class action allegations should be denied because "the propriety of class certification is not ripe for determination at the pleadings stage." *Id.* at 27.

The facts of this matter derive from Plaintiff's SAC. In June 2013, Plaintiff purchased a new BlackBerry 10 Series Cellular Telephone from T-Mobile in Paramus, New Jersey for

---

[3] Defendant's Brief in support of its Motion to Dismiss will be referred to hereinafter as "Def. Br." (D.E. 36), Plaintiff's Opposition to Defendant's brief will be referred to hereinafter as "Pl. Opp." (D.E. 41), and Defendant's Reply Brief in support of its Motion to Dismiss will be referred to hereinafter as "Def. Reply" (D.E. 42).

[4] Defendant raises three additional arguments that are no longer at issue. First, Defendant states that Plaintiff fails to state a claim for violation of the implied warranty of fitness for a particular purpose. *Id.* at 13-14. Plaintiff does not dispute this contention. *See* Pl. Opp. at 11 ("Plaintiff's true implied warranty claim centers upon the warranty of merchantability."). Second, Defendant argues that BlackBerry's license agreement expressly disclaimed the application of any and all implied warranties. Def. Br. at 14-17. This argument was refuted by Plaintiff, who claims that the license is unenforceable because 1) Plaintiff never received or was aware of the license; and 2) the disclaimer in the license is not conspicuous as required by New Jersey Law. Pl. Opp. at 20-21. Defendant concedes that Plaintiff's first argument, whether he received the license, is one of disputed fact, and therefore not properly decided in a motion to dismiss. Def. Reply at 6-7. Third, Defendant argues that Plaintiff lacks standing to assert claims based on any BlackBerry Model other than the Q10 model which he purchased. Def. Br. at 2. Judge Wigenton already made this determination on February 2, 2016. D.E. 31. This argument is also conceded by Plaintiff and is no longer at issue. *See* Pl. Opp. at 1 n.1.

[5] The Court does not find Plaintiff's waiver argument availing. As Defendant points out, in Plaintiff's Opposition to BlackBerry's first motion to dismiss, he argued that "the proper procedural mechanism for making [class action] argument[s] is a motion to strike under Federal Rule of Civil Procedure 12(f)." D.E. 26 at 27. As a result, in Defendant's current motion to dismiss, it relied upon a motion to strike the class action allegations. Plaintiff cannot first argue that Defendant must raise its opposition to the class action allegations in a motion to strike (as opposed to a motion to dismiss), and then fault the Defendant for doing just that.

2

approximately $620.59. SAC ¶ 10. BlackBerry 10 telephones include a feature called BlackBerry® Link ("BB Link"). *Id.* ¶ 24. Plaintiff describes BB Link as follows:

> This feature allows users to sync and organize music, documents, photos and videos between a Black[B]erry10[6] device and a computer. It is compatible with Mac and PC, and supports iTunes and Windows Media Player. Syncs are done over Wi-Fi or USB. BlackBerry Link also facilitates device switches from Android and iOS as well as BB10 software updates. Link transfers contacts, files, calendars, tasks, bookmarks, alarm clocks, SMS, phone logs, WLAN profiles and other information between devices.

*Id.* One way this feature is used is through a contacts application offered with the smartphone, which BlackBerry describes as follows:

> When you add contacts to your BlackBerry device, connecting with them is easy. The Contacts app is integrated with the BlackBerry Hub, your Calendar app, and other apps, so you can quickly add contacts to relevant messages and events or share your pictures and videos. If you added an email account or social networking account to your device, contacts from those accounts can appear in your contact list. It's simple to find the people that you want to connect with because your device automatically merges contacts who share first and last name, email addresses, or mobile phone numbers… BlackBerry device automatically merges contacts when it's clear that those contacts are the same person (for example, they share the same first and last name, mobile phone number, BlackBerry ID, and so on)[.]

*Id.* ¶ 29 (internal footnotes omitted) (the contacts "app" is hereinafter "Contacts Application" or the "Application"). After purchasing his smartphone, Plaintiff discovered a defect in the Contacts Application. *Id.* Instead of merging contacts "when it's clear those contacts are the same person," Plaintiff alleges that the Application was defective and "randomly merge[d] unrelated contacts stored in the phone." *Id.* ¶ 30.[7]

---

[6] The SAC vacillates between different spellings of "BlackBerry" ("BlackBerry" and "Blackberry"). The Court will use the same spelling that Defendant uses.

[7] Plaintiff alleges two additional defects in the SAC: 1) the photo application "fails to permit the user to manage the size and resolution of photographs for the purpose of emailing"; and 2) the smartphone "fails to support widely utilized applications such as Yahoo Calendar." *Id.* ¶¶ 32, 33. Defendant accurately points out that Plaintiff, other than in a footnote referencing resizing photos, does not mention these alleged defects in his motion papers. Def. Reply at 2. As a result, the Court considers Defendant's arguments concerning the two additional defects as unopposed. The Court also finds Defendant's arguments persuasive and the two additional defects do not properly allege a claim for breach of implied warranty.

3

Plaintiff contends that this defect goes to "the most basic and fundamental characteristics of 'smart' cellular telephones," which are: "(a) the ability to send and receive text messages, emails, voice calls and data such as photos; and (b) the ability to retrieve information and place calls through use of a pre-installed contact data base or address book." *Id.* ¶ 20. By "affect[ing] the ability of Plaintiff and Class Members to place telephone calls to intended recipients," the defect "render[s] Blackberry 10 Series Cellular Telephones unfit for the ordinary purpose for which Blackberry 10 Series Cellular Telephones are sold." *Id.* ¶¶ 36, 39. Plaintiff therefore brings the present action to remedy the harm suffered by himself and members of the putative classes. *Id.* The classes Plaintiff purports to bring claims on behalf of are: 1) a "Multi-State Class"; and 2) a "New Jersey Sub-Class." *Id.* ¶ 82.

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

"A warranty of merchantability is implied by law in every contract for the sale of goods." *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, No. 08-939, 2009 WL 2940081, at *16 (D.N.J. Sept. 11, 2009). Merchantability "requires that a product conform to its ordinary and intended use." *Hughes v. Panasonic*, No. 10-846, 2011 WL 2976839, at *21 (D.N.J. July 21, 2011). The warranty does not "impose a general requirement that goods precisely fulfill the expectation of the buyer," but instead "it provides for a minimum level of quality." *Id.* at *22 (internal quotation marks omitted). Thus, the warranty imposes a requirement that "the thing sold is reasonably fit for the general purpose for which it is manufactured and sold." *Ferrari v. Am. Honda Motor Co., Inc.*, No. 4296-06, 2009 WL 211702, at *3 (N.J. Super Ct. App. Div. Jan. 30, 2009) (internal quotation marks omitted); *see also Berenblat v. Apple, Inc.*, Nos. 08-4969, 09-

1649, 2009 WL 2591366, at *3 (N.D. Cal. Jan. 6, 2012) ("[A] defect must render the product unfit for its ordinary purpose.").

Once a plaintiff alleges a defect that touches on the core functionality of a product, he must "demonstrate that this alleged defect is more than [an] inconvenience." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1108-09; *see also In re Google Phone Litig.*, No. 10-01177, 2012 WL 3155571, at *5 (N.D. Cal. Aug. 2, 2010) (finding that "[p]laintiffs' allegations that the phone drops calls or misses calls are insufficient to demonstrate that the alleged defect is more than inconvenience"). Rather, a plaintiff must allege that the defect deprived him of the object's "operative essentials." *Rothbaum v. Samsung Telecomms. Am., LLC*, 52 F. Supp. 3d 185, 202 (D. Mass. 2014). Thus, once a defect is determined to go to the object's "core functionality," "the impairment of the core functionality must be significant enough to prevent the product from reaching a reasonably expected minimum level of quality." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1110.

Two cases, *Horvath v. LG Electronics Mobilcomm U.S.A., Incorporated*, No. 11-1567, 2012 WL 2861160, at *7 (S.D. Cal. Feb. 13, 2012), and *Taliaferro v. Samsung Telecomms. America, LLC*, 2012 WL 169704, at *1 (N.D. Tex. Jan. 19, 2012), are instructive. In *Horvath*, plaintiffs alleged that their smartphone repeatedly shut down, froze, and did not work unless the battery was repeatedly removed and reinserted in the phone. 2012 WL 2861160, at *7. The entire phone failed repeatedly, to the point that it could not be used without shutting down the phone entirely. *Id.* The court denied defendant's motion to dismiss, finding that the "[p]laintiffs allege facts to make [out] their claim for breach of the implied warranty of merchantability." *Id.* Similarly, in *Taliaferro*, plaintiffs alleged that "their Galaxy S phones frequently shut down when they entered standby mode, and the phones would not power back on unless the user removed and reinserted the battery." 2012 WL 169704, at *1. Plaintiffs explained that this defect manifested "as many as ten times each day" and "caused users to lose data." *Id.* The *Taliaferro* court ruled that "the factual basis for the claim [of breach of implied warranty] is established by the pleadings," and denied defendant's motion to dismiss. *Id.* at *5.

*Minker v. Apple, Incorporated*, is also relevant. 65 F. Supp. 3d 810, 819 (N.D. Cal. Aug. 20, 2014). In *Minker*, the court looked at a defect to an iPhone's navigation system, Apple maps. The Court held that the plaintiff "fail[ed] to allege that the ordinary purpose of the iPhone 5 was navigational capability." *Id.* Additionally, the court noted that plaintiff "failed to allege a *fundamental* defect in the software." *Id.* (emphasis added). Specifically, the plaintiff did not allege that "Apple Maps failed to work at all or even that it failed to work a majority of the time." *Id.* Thus, the *Minker* court dismissed Plaintiff's cause of action, finding that the "[p]laintiff has not alleged a plausible claim for relief under breach of implied warranty." *Id.*

Since merchantability requires deciphering the "general purpose for which [an object] is manufactured and sold," the Court will first consider the "general purpose" of smartphones. *Ferrari*, 2009 WL 211702, at *3. Defendant alleges that "plac[ing] telephone calls" is the "general purpose for a smartphone." Def. Br. at 11. Plaintiff provides varying allegations as to the general purpose of his BlackBerry. First, he claims that "amongst the most basic and fundamental characteristics of 'smart' cellular telephones" is the "ability to retrieve information and place calls through the use of a pre-installed contacts data base or address book." SAC ¶ 20. Plaintiff later alters his initial definition of the ordinary purpose of a smartphone. *See id.* ¶ 30 ("the most basic

and critical function of the device" is "placing telephone calls"); *id.* ¶ 96 (alleging that "[t]he primary functions of 'smart' phones" are to "allow you to send and receive email and text messages as well as take photos, listen to music, watch movies, and read books and those are just the basics.") (internal quotation marks omitted).

The Court finds both parties' definitions insufficient to accurately convey the core function of a smartphone. The essential question is what makes a smartphone smart? Such devices have certainly evolved from their ancestor, the basic cell phone. Now, smartphones are more akin to a hand-held computer. The Oxford English Dictionary defines a smartphone as "a mobile phone capable of running general-purpose computer applications, now typically with a touch-screen interface, camera, and Internet access." Oxford English Online Dictionary, 2016, http://www.oed.com/ (last visited June 16, 2016). The Court finds this definition accurate and will thereby adopt it.

The question then becomes whether merging contacts is part of the core function of a smartphone as defined above? Defendant alleges that in order to implicate a breach of warranty, Plaintiff must allege that he "could not place telephone calls manually, re-dialing or clicking on a phone number in an email." Def. Br. at 11. Plaintiff argues that this standard equates a smartphone with a payphone or landline. Pl. Opp. at 15. The Court agrees that such a limited view is not persuasive. If this matter concerned land lines and basic cell phones, the warranty would require pleading that a consumer could not manually dial and place calls. However, because smartphones are much more than mere cell phones, this Court does not believe that Plaintiff must plead an inability to dial manually in order to sufficiently allege a breach of warranty.

Here, Plaintiff's allegations concern the Contacts Application and its ability to effectively sync with other devices. If the SAC alleged that the contacts function itself was defective, the Court may be more sympathetic to Plaintiff's position.[8] But Plaintiff does not allege that his contacts function was unusable. Instead, he claims that his ability to sync his BlackBerry contacts with other electronic devices was defective. SAC ¶ 30. Plaintiff alleges that rather than merging related contacts, the Application "randomly merges unrelated contacts stored in the phone." *Id.*

As a matter of law, the ability to *merge* or *sync* contacts does not go to the core function of a smartphone. Plaintiff has cited no law, nor could the Court find any, leading to a contrary result. As noted, in both *Horvath* and *Taliaferro*, the entire smartphone became unusable several times a day and the owner was forced to remove and reinsert the battery to restart it. Inability to merge contacts is not in the same sphere of malfunctioning. Even *Minker*, which concerned the navigational function of a smartphone, alleges a problem arguably more severe (at least depending

---

[8] The Court is not ruling that an unusable contacts function would necessarily be a basis for breach of implied warranty vis-à-vis a smartphone. Instead, the Court is merely acknowledging that if that was the defect alleged, it would be a closer call than the current matter. The issue, however, does not appear to have been addressed by another court and it would be more appropriate to reserve such a decision to an actual case or controversy.

6

upon the particular user) than the ability to merge contacts. Yet, in *Minker*, the navigational capability was not found to be part and parcel of the ordinary purpose of a smartphone.

Even if the ability to merge contacts was a core function, the SAC inadequately pleads facts to support a cause of action. The SAC is sparse regarding how often the merging error occurs and the effects of such defect. Thus the SAC leaves many unanswered questions regarding this defect: Does a defective merger result in one contact having an incorrect phone number? Are all of a user's contacts affected by inaccurate mergers? Could the user still access the correct phone number for a contact that has been incorrectly merged? Is there a way to turn off the Contacts Application and still use the smartphone? In the present case, Plaintiff merely alleges that his contacts "frequently" merged, "completely frustrating" the use of his phone. SAC ¶ 67. These allegations show that one component of Plaintiff's phone (contacts) suffered an ambiguously described defect (merging inaccurately), with an unknown occurrence rate ("frequently"). There is no evidence that all of Plaintiff's contacts were affected or of how often the defect occurred. Merely stating that the defect occurred with "frequency," without more, is insufficient to meet the pleading standard. Similar factual pleading deficiencies were noted in *Minker*. By comparison, in *Horvath* and *Taliaferro*, the plaintiffs explicitly alleged that the failures occurred numerous times each day.[9]

As noted, Plaintiff also brings class allegations. Plaintiff sets forth two proposed classes: 1) the "Multi-State Class"; and 2) the "New Jersey Sub-Class." SAC ¶ 82. The Multi-State Class consists of residents of thirty-one states, not including New Jersey, who had purchased Defendant's BlackBerry 10 Series Cellular Telephone. *Id*. The New Jersey Sub-Class is comprised of all residents of the State of New Jersey who had purchased Defendant's BlackBerry 10 Series Cellular Telephone. *Id*. Defendant argues that the Multi-State Class allegations should be dismissed because Plaintiff is not a member of the class he seeks to represent. Def. Br. at 24-25. Additionally, Defendant argues that the New Jersey Sub-Class should be dismissed because individual issues predominate over issues common to the class. *Id*. at 22-24. In response, Plaintiff

---

[9] Plaintiff also asserts that his warranty claim does not require the defect to preclude use of the object all of the time. Plaintiff nonetheless cites to cases in which the defects were, in fact, constantly present. *See, e.g., Long*, 2013 WL 4655763, at *1 (finding a breach of warranty when defective seat buckles were "unreasonably difficult or impossible to unlatch"); *Fleisher v. Fiber Composites, LLC*, No. 12-1326, 2012 WL 5381381 at *7 (E.D. Pa. Nov. 2, 2012) (mold on outdoor decks was always present and made deck unfit for its intended purpose); *Isip v. Mercedes-Benz USA*, 155 Cal. App. 4th 19, 27 (Cal. Ct. App. 2007) (leaking transmission, faulty brakes, and "transmission hesitation" were always present and rendered car unfit for its ordinary purpose). On the other hand, Defendant argues that the standard is complete inoperability. However, an object need not be "inoperable" to implicate a warranty claim. *See Stearns*, 2009 WL 1635931, at *8 (finding that an alleged defect does *not* need to preclude use of the object entirely) (emphasis added). In fact, the devices at issue in *Horvath* and *Taliaferro* were usable some of the time during each day but the plaintiffs set forth sufficient facts to proceed with their cases.

asserts that it is premature to bring up the issue of class action allegations in a motion to dismiss without providing much by way of discussion or reasoning. Pl. Opp. at 27.

Defendant's first argument is that a plaintiff must be a member of the class to have standing. Def. Br. at 24-25. The Court agrees. A named plaintiff must be a part of the class which he seeks to represent.[10] *See e.g., Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 156 (1982) ("We have repeatedly held that a class representative must be part of the class"); *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216 (1974) ("To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class"); *Betts v. Reliable Collection Agency, Ltd.,* 659 F.2d 1000, 1005 (9th Cir. 1981) (holding that subclasses must be dismissed because "the fundamental requirement that the representative plaintiff must be a member of the class he represents" was not met). Even when a plaintiff is a *part of* a multi-state class, courts in this Circuit have held that the plaintiff does not have standing to assert claims under the laws of states in which he does not reside. *See e.g., McGuire v. BMW of N. Am., LLC,* No. 13-7356, 2014 WL 2566132, at *6 (D.N.J. June 6, 2014); *In re Wellbutrin XL Antitrust Litig.,* 260 F.R.D. 143, 155 (E.D. Pa. 2009). Thus, because Plaintiff is not a member of the class of thirty-one states, he cannot prosecute claims on behalf of those in that class. *See Berger v. Home Depot USA, Inc.,* 741 F.3d 1061, 1067 (9th Cir. 2014) ("Because he is not a member of those subclasses, Berger cannot prosecute claims on their behalf.").[11] Accordingly, even if Plaintiff had asserted a valid claim for breach of implied warranty, the Court would still dismiss the Multi-State Class at this stage.

Defendant further argues that the New Jersey Sub-Class should be dismissed because individual issues predominate over those issues common to the class as a whole. Def. Br. at 22-24. Although the Court possesses the discretion to strike class allegations at the pleading stage, it is uncommon except for limited situations (such as the clear lack of standing concerning the Multi-State Class in this case). *See, e.g., Landsman & Funk PC v. Skinder-Strauss Assocs.,* 640 F.3d 72, 93 (3d Cir. 2011) (finding a District Court's determination of class certification issues premature and noting that "[i]n *most cases,* some level of discovery is essential" to an evaluation of class allegations) (emphasis added); *Ehrhart v. Synthes (USA),* No. 07-01237, 2007 WL 4591276, at *5 (D.N.J. Dec. 28, 2007) ("[D]ismissal of class allegations at [the motion to dismiss] stage should

---

[10] The Court is aware that courts in this District, in certain circumstances, will permit a putative class action plaintiff to go forward even if he did not purchase the specific product at issue. *See e.g., Burke v. Weight Watchers Intern., Inc.,* 983 F. Supp. 2d 478, 482 (D.N.J. 2013); *Stewart v. Smart Balance Inc.,* No. 11-6174, 2012 WL 4168584, at *16 (D.N.J. June 26, 2012). In these cases, once certain elements are met, the courts will delay the inquiry of the appropriate class until later in the proceedings. *In re L'Oreal Wrinkle Cream Mktg. & Sales Practices Litig.,* No. 12-03571, 2013 WL 6450701, at *4 (D.N.J. Dec. 9, 2013); *Stewart,* 2012 WL 4168584, at *16. However, in light of the fact that Plaintiff is not a member of the Multi-State Class, and because such a class would require the court to apply the substantive law from numerous other states, the Court is deciding the issue at the pleadings stage.

[11] Defendant cites numerous additional arguments in its motion to strike or dismiss the Multi-State Class. *See* Def. Br. at 25-38. Since the Court is dismissing the Multi-State Class allegations on standing grounds, it will not address these additional arguments.

8

be done rarely and that the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery.") (internal quotation marks omitted). The Third Circuit has further noted the depth of a predominance inquiry and held that "[p]articularly when a court considers predominance, it may have to venture into the territory of a claim's merits and evaluate the nature of the evidence." *Landsman & Funk PC*, 640 F.3d at 93. The Court is therefore not inclined to address the predominance challenge to the New Jersey Sub-Class at the motion to dismiss stage.

Ordinarily the Court would allow the New Jersey Sub-Class allegations to proceed through to the discovery process. In addition, in the usual course, if the pleading was merely factually deficient, the Court would permit Plaintiff the opportunity to file an amended complaint. However, since the Court finds Plaintiff's claim of implied warranty inadequate as a matter of law, the Court will not grant Plaintiff's request to file another amended complaint and the Court will dismiss the class action requests as well.

The Court **GRANTS WITH PREJUDICE** Defendant's motion to dismiss.

**SO ORDERED.**

JOHN MICHAEL VAZQUEZ
UNITED STATES DISTRICT JUDGE